IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 27, 2021

**STATE OF TENNESSEE v. QUINCY D. SCOTT**

**Appeal from the Criminal Court for McMinn County**
**No. 19-CR-291      Sandra Donaghy, Judge**

_____

**No. E2020-01186-CCA-R3-CD**

_____

Petitioner, Quincy D. Scott, was convicted of aggravated robbery and was sentenced to seventeen years as a Range II, multiple offender at eighty-five percent to be served consecutively to sentences in two other counties. After this court affirmed the judgment and the supreme court denied permission to appeal, Petitioner sought post-conviction relief, alleging ineffective assistance of counsel at trial and on appeal. The post-conviction court granted Petitioner a delayed appeal to allow him to raise multiple evidentiary issues. In this delayed appeal, Petitioner challenges the admission of the same pieces of evidence and the testimony of three of the State's witnesses. He also challenges the omission of evidence regarding the professional misconduct of a detective. The State contends Petitioner is entitled to no relief. The State also contends Petitioner was erroneously granted a delayed appeal because the record does not demonstrate prejudice. We are precluded from reviewing this issue based on the post-conviction court's failure to make findings of fact and conclusions of law, as required by Tennessee Code Annotated section 40-30-111(b). Accordingly, we reverse the judgment of the post-conviction court granting a delayed appeal and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed**

JILL BARTEE AYERS J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Quincy D. Scott, Wartburg, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; Cody N. Brandon, Assistant Attorney General; Steven Crump, District Attorney General; and Dorothy Cherry, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTS AND PROCEDURAL HISTORY

This case is complicated by Petitioner's numerous filings and his reliance on an aggravated robbery case that was dismissed. Petitioner was indicted for the aggravated robbery of a branch of a Check Into Cash in Athens, Tennessee ("Athens robbery") and the aggravated robbery of another branch in Etowah, Tennessee which is the subject of this appeal. In the Athens robbery trial, a mistrial was declared after the jury was unable to reach a unanimous verdict. The State later dismissed the Athens robbery case and it is not relevant to this appeal.

In this case, in addition to being charged with aggravated robbery, Petitioner was also charged with possession of a weapon by a convicted felon. The weapon possession charge was nolle prosequied by the State on January 6, 2016, the day before the trial. This court's summary of the proof at trial is reproduced below:

> [O]n June 28, 2014, [Petitioner] entered a Check Into Cash and informed Felicia Bra[n]am, the assistant manager, that he needed a loan.[1] As Ms. Bra[n]am was questioning [Petitioner] about the loan, he pulled a piece of a black stretchy material over his face, brandished a gun, and demanded money. [Petitioner] took more than $3,300 in cash and fled.
>
> Lisa Raby, the manager, was in the parking lot and saw a man leave the store and place a gun in the back of his pants. A black truck drove into the parking lot, and the man entered on the passenger side. Ms. Raby attempted to follow the truck but lost sight of it in traffic. She was not able to identify the individual with the gun in a photographic line-up.
>
> Initially, Ms. Bra[n]am was unable to identify the perpetrator in a photographic line-up that did not include [Petitioner]. On July 10, 2014, while investigating an accident during which the driver fled the scene, Detective Josh Rhodes initiated a traffic stop of a truck that he described as so dark blue that it appeared to be black. Larry Moore, who was the focus of an ongoing bank robbery investigation, was the driver, and [Petitioner] was a passenger. Detective Rhodes allowed [Petitioner] and Mr. Moore to leave once the detective received information that they were not involved in the accident. While speaking to [Petitioner], Detective Rhodes realized that [Petitioner] matched the description of a suspect that the detective received

---

[1] We will spell this witness's last name as she spelled it according to her trial testimony.

in a be-on-the-lookout alert. Detective Rhodes provided [Petitioner]'s information to Detective Jim Shaw, who prepared a photographic line-up that included [Petitioner]'s photograph. Ms. Bra[n]am identified [Petitioner] as the perpetrator in the photographic line-up and at trial.

After a warrant was issued for [Petitioner]'s arrest, Detective Rhodes initiated a traffic stop of the same truck and spoke to Mr. Moore about [Petitioner]'s location. Detective Rhodes arrested [Petitioner] later that same day. Detective Rhodes also searched the truck and seized an "air soft type pistol" and magazine, a set of Walkie-Talkies, a black "cinch sack" with rainbow colors on the reverse side, a Joker's mask, and a black nylon "do-rag." The "do-rag" included a DNA mixture of three individuals, and [Petitioner] could not be excluded as a contributor.

[Petitioner] presented the testimony of Dr. Jeffrey Neuschatz, an expert in cognitive psychology and eyewitness identification, regarding the factors that could have affected a witness's identification of a perpetrator and regarding problems with the photographic line-ups. [Petitioner] also presented the testimony of Officer Michael Richmond, who responded to the scene and followed a black Chevrolet truck that he believed matched the description of the truck involved in the robbery. Officer Richmond's description of the truck differed from the description offered by Ms. Raby at trial. Officer Richmond, however, lost contact with the truck.

*State v. Quincy D. Scott,* No. E2017-01416-CCA-R3-CD, 2018 WL 3156979, at *1 (Tenn. Crim. App., at Knoxville, June 27, 2018), *perm. app. denied* (Tenn. Oct. 11, 2018). Based on the evidence, the jury convicted Petitioner as charged. On November 2, 2016, the trial court sentenced Petitioner to seventeen years as a Range II, multiple offender at eighty-five percent to be served consecutively to sentences in Hamilton County and Bradley County.

*Motion for Judgment of Acquittal and Motion for New Trial*

On the same day of his sentencing hearing, Petitioner, through newly appointed counsel filed a motion for judgment of acquittal. Petitioner filed an amended motion on December 1, 2016, styled, "Second Motion for Judgment of Acquittal and New Trial." This motion was followed by two amendments with two claims of newly discovered evidence. The first amendment included the notice of termination of Josh Rhodes from the McMinn County Sheriff's Department. The second amendment included photographs of Petitioner's right foot depicting a childhood disability. A hearing was held on the motion for new trial on June 2, 2017. No evidence was presented; only arguments of the parties

were heard.  The trial court entered an order denying the motion for new trial on June 28, 2017, and Petitioner filed a timely notice of appeal the following day.

*Direct Appeal*

In his direct appeal, Petitioner claimed that the cumulative effect of various errors at trial entitled him to a new trial. *Quincy D. Scott,* 2018 WL 3156979, at *2.  Petitioner complained of "numerous errors in the admission of evidence" and "numerous discrepancies in the evidence."  *Id.*  Petitioner's appellate brief alleged the following individual errors:

> Detective Rhodes's termination from the McMinn County Sheriff's Department and subsequent criminal investigation into his misdeeds constituted newly discovered evidence of impeachment that warranted a new trial;
>
> Evidence seized from Mr. Moore's truck was irrelevant and prejudicial;
>
> The State was improperly allowed to show photographs of evidence collected from Mr. Moore's truck when the evidence was lost prior to trial;
>
> The jury heard testimony that Mr. Moore was a suspect in an unrelated robbery;
>
> Ms. Branam's testimony on the robber's height and build, his head gear, and the bag used to collect the proceeds of the robbery was inconsistent with her statement to the police made closer in time to the robbery;
>
> Ms. Raby's description of the getaway vehicle was inconsistent with the statement she gave closer in time to the robbery.

In affirming the judgment, this court agreed with the State that Petitioner had waived his claims of individual errors due to inadequate briefing:

> We note that the appellate record in this case is extensive.  The parties filed numerous pretrial motions and made numerous objections throughout the trial that necessitated bench conferences and jury-out hearings.  We decline to scour the record in an attempt to ascertain any relevant discussion regarding [Petitioner]'s claims; any argument that [Petitioner] may have made before, during, and after trial challenging the trial court's decisions; the basis upon which the trial court rendered its decisions; and any other

- 4 -

information that might support [Petitioner]'s claims of error. In other words, we decline to do [Petitioner]'s work for him when he was on notice of the State's argument of an insufficient brief and he failed to take any corrective action despite having an opportunity to do so.

*Id.* This Court also noted that appellate counsel was asked about the State's argument for waiver due to inadequate briefing:

[Petitioner]'s counsel acknowledged that he reviewed the State's brief in which the State asserted that [Petitioner] waived his claims due to an inadequate brief shortly after the State filed its brief. However, counsel chose not to file a reply brief correcting the deficiencies.

The supreme court denied Petitioner's application for permission to appeal on October 11, 2018.

*Post-Conviction Proceeding*

According to the post-conviction court's order, Petitioner timely filed a pro se post-conviction petition on April 2, 2019. That petition is not in the record. The post-conviction court issued an order requiring Petitioner to amend and correct his petition by May 8, 2019, to avoid dismissal for failure to allege facts supporting his claims for relief. Instead of filing an amended petition, Petitioner filed a motion for change of venue from the post-conviction judge who was also the trial judge. The post-conviction court treated this motion as a motion for recusal and denied the motion on June 3, 2019.

Petitioner simultaneously pursued parallel paths to seek recusal of the post-conviction judge by filing a notice of appeal under Tenn. R. App. P. 3, ("Rule 3 appeal") and an accelerated application for permission to appeal under Tenn. Sup. Ct. R. 10B, § 2.0 ("Rule 10B application"). While the Rule 10B application was still pending, Petitioner moved to voluntarily dismiss the Rule 3 appeal, stating that "The [post-conviction] court of McMinn County notified [him] via U.S. Mail that it filed [his] amended post-conviction petition on June 24th 2019, immediately after [his] notice of appeal was filed in [this court] on June 21st 2019." The June 24, 2019 amended petition is not in the record. The record reveals that the post-conviction court reviewed the June 24, 2019 amended petition and entered a preliminary order finding "partial colorable claim." The post-conviction court appointed counsel to represent Petitioner and ordered counsel to file an amended pleading within thirty days of its order of July 5, 2019. In response, Petitioner filed a pro se application for an extraordinary appeal under Tenn. R. App. P. 10 ("Rule 10 appeal") challenging the post-conviction court's order appointing counsel. At one point, Petitioner had three pending appeals: the Rule 3 appeal, the Rule 10B application, and the Rule 10

appeal.  Ultimately, this court granted Petitioner's motion to dismiss the Rule 3 appeal, No. E2019-01114-CCA-R3-PC, and dismissed the Rule 10 extraordinary appeal, No. E2019-01323-CCA-R10-PC.  The supreme court denied the Rule 10B application, No. E2019-01110-CCA-T10B-CO.

Following the resolution of Petitioner's appeals, post-conviction counsel filed a motion to withdraw which the post-conviction court granted on December 9, 2019.  On the same date, Petitioner filed another post-conviction petition using the standard boilerplate post-conviction form, "petition for relief from conviction or sentence."  This petition was assigned a new case number.  However, based on Petitioner's past filings, the post-conviction court treated the December 9, 2019 petition as an amended petition and a continuation of the post-conviction proceeding which commenced on April 2, 2019:

> Previous filings were timely and within the Statute of Limitations.  The previous filings did not conform to the law and corrections were required. [Petitioner] elected to re-file rather than to try to correct his previous filings with additional grounds and specific facts.  In the interests of fairness, this filing will be considered as timely since it is a clearer and specific allegation of his original claims.

Although Petitioner was indigent, the post-conviction court declined to appoint counsel in light of the court's previous dealings with Petitioner:

> [I]n his previous filings, where counsel was appointed, [Petitioner] clearly expressed his desire to self-represent and refused to cooperate with appointed counsel.  The *Smith*[2] factors were reviewed with [Petitioner] and he unequivocally waived appointed counsel.  It is [Petitioner]'s express intent to waive appointed counsel and represent himself on this petition.

If there was a hearing where Petitioner waived the right to counsel under oath, a transcript of that hearing is not in the record.  Because no amended pleading was expected, the post-conviction court ordered the State to respond within thirty days of receipt of the order.  The post-conviction court scheduled the hearing for April 16, 2020.  Before the hearing, Petitioner filed seven pleadings including demands for discovery and requests for subpoenas.  Petitioner amended his post-conviction petition two more times before the hearing on August 13, 2020.

---

[2] *See Smith v. State*, 987 S.W.2d 871, 877-78 (Tenn. Crim. App. 1998) (quoting Guideline[s] For District Judges from 1 Bench Book for United States District Judges 1.02-2 to - 5 (3d ed.1986)).

At the hearing, Petitioner orally moved to file yet another amended petition insisting that "it really wouldn't be any prejudice to the State because it's just a cleanup of the original with one new issue[.]" The State objected to the filing of another amended petition at the hearing and the July 29, 2020 amended petition because the deadline for doing so had expired. While the post-conviction court noted that Petitioner had already amended his petition "three or four times," the post-conviction court overruled the State's objection holding that it would "receive" the amended petitions because Petitioner was pro se, was entitled to only one post-conviction petition per judgment, and the claims he was raising in the amended petitions had been raised in previous filings.

The post-conviction court noted that the records from Petitioner's direct appeal: one technical record, eight transcripts, and twenty-three exhibits had been forwarded from the Appellate Court Clerk's office to be returned at the conclusion of the post-conviction proceedings. The post-conviction court announced that parties could refer to the records but that they would not be made an exhibit to the proceeding. The post-conviction court took judicial notice of this court's opinion on direct appeal and exhibited it to the hearing. *See, Quincy D. Scott,* 2018 WL 3156979.

Following Petitioner's opening argument, the State asked the post-conviction court to first consider Petitioner's claim against appellate counsel under Tenn. Sup. Ct. R. 28, § 8(D)(3) ("[i]n the event that the petition alleges that petitioner was unconstitutionally deprived of an appeal and was also entitled to relief on other grounds, the court shall bifurcate the proceedings and determine first whether petitioner was denied an appeal, while holding the other claims in abeyance"). The post-conviction court granted the State's request without objection.

Petitioner's first witness was appellate counsel who testified that he received "a lot of transcripts" from Petitioner's trial counsel to prepare the motion for new trial and the direct appeal. Appellate counsel recalled Petitioner advising him to obtain a transcript of the preliminary hearing because Petitioner insisted that "Josh Rhodes was lying on [Petitioner] the whole time," and the preliminary hearing transcript would show that Petitioner "was being defrauded out of a fair trial." What Petitioner characterized as "fraud," appellate counsel characterized as issues of witness credibility and the nature of the State's evidence against Petitioner:

> The fraud I was thinking [Petitioner was] referring to was the issue with the police, issues, they had. I think it was Josh Rhodes that was stealing credit cards and things of that nature. And the things that they did to – the evidence they produced or got together to convict you. I wouldn't necessarily

- 7 -

characterize that as fraud per se. But now – but just the evidence they had against you.

Appellate counsel recalled that information about Detective Rhodes's misdeeds became available "every month or month and a half" after appellate counsel was appointed. Eventually, the District Attorney made a statement about Detective Rhodes and his termination from the Sheriff's Department. That statement was the basis for a newly discovered evidence claim in the motion for new trial.

When asked whether he recalled Petitioner pointing out that Ms. Branam had testified "false[ly]" when describing the robber's pants, appellate counsel noted that "there were two ladies that identified [Petitioner]. There was one in the store and there was another lady" who saw Petitioner flee the scene. Despite two people identifying Petitioner as the robber, appellate counsel found the photographic lineups to be "sketchy" because of Detective Rhodes's involvement in the case. And because he found "a lot of things that were sketchy" about Petitioner's case, appellate counsel pursued the strategy of arguing cumulative error on direct appeal. Appellate counsel believed that cumulative error would be the "best shot" to obtain relief on Petitioner's multiple issues because no one issue stood out as a winning issue:

> [I]n looking at what you had with all the issues there, I didn't see one that was a drop-dead – and this is from my experience – that would give you relief. All of them together maybe. I thought this might be the one. I'd seen some cases in doing some research. This seemed to be the best shot for me for you to try to put it in that form . . . I thought that was the best thing you had.

Appellate counsel understood that any issues not raised at trial could be reviewed for plain error on direct appeal. He went on to explain that any appellate issues were limited to the trial and could not be used to challenge alleged errors at the preliminary hearing. For instance, when Petitioner asked appellate counsel why he failed to "investigate [Petitioner's] preliminary hearing claims that Josh Rhodes and Jim Shaw . . . had the wrong guy . . . [and] introducing fake evidence against [Petitioner]," appellate counsel explained that the trial record was "pretty extensive" and showed that the trial court fully addressed any issues regarding the admissibility of all the evidence which would include purportedly "fake" evidence. Petitioner asked appellate counsel why he did not investigate the preliminary hearing despite Petitioner's repeated insistence to do so. Appellate counsel explained that he was appointed to "get you through sentencing" and not to conduct a full-scale investigation of Petitioner's case. According to appellate counsel, the duty of investigating the case rested with trial counsel. Appellate counsel recalled that "it took about all I could do to get through the sentencing" due to the extensive records.

- 8 -

Appellate counsel testified that he and Petitioner discussed the possible issues for the motion for new trial. Based on their discussions, appellate counsel filed three amendments to the motion for new trial in order to raise "everything we needed to . . . bring before the court." By filing three additional amendments to the motion, appellate counsel believed that "they took care of everything" Petitioner wanted addressed. Petitioner acknowledged that appellate counsel "basically raised the issues" he wanted to be raised on direct appeal but "wasn't specific[.]" Appellate counsel testified that based on his experience, he did not think he needed to file a reply brief. He admitted however, that he "was wrong about that."

Petitioner took issue with the State presenting photographs of certain pieces of evidence instead of the actual evidence and accused the State of committing a *Brady* violation.[3] Appellate counsel explained that Petitioner's case did not involve a *Brady* violation because the State did not withhold any evidence from Petitioner. Appellate counsel recalled that the State provided the evidence to Petitioner during the discovery but had lost it prior to trial and used photographs in lieu of the lost evidence at trial.

Petitioner asked appellate counsel why he did not challenge the admission of the Joker's mask as "fabricated evidence and aggravated perjury because that's what it was and I was asking you to do it that way[.]" Appellate counsel explained that "the more practical term" would be that the Joker's mask should not have been introduced because it was irrelevant. Accordingly, appellate counsel argued that the Joker's mask was irrelevant because it was seized from Mr. Moore's truck two weeks after Mr. Moore had been pulled over while Petitioner was a passenger. Appellate counsel also argued that the admission of the mask was prejudicial. Appellate counsel recalled that the trial court addressed the relevancy of the Joker's mask at the trial and found the mask to have been properly admitted.

Petitioner accused Ms. Branam of "fabricat[ing] modus operandi evidence in an attempt to overwhelm [him] with two (robbery) cases[.]" According to Petitioner, Ms. Branam testified that the man who robbed her wore black pants "the same as the robber" in the Athens robbery trial. Petitioner averred that her testimony established "modus operandi" to consolidate the two robbery cases. When questioned why he did not challenge Ms. Branam's inconsistent description of Petitioner's pants in the motion for new trial and on direct appeal, Appellate counsel noted that the robbery charge in the Athens robbery

---

[3] *See Brady v. Maryland,* 373 U.S. 83, 87 (1963) ("[w]e now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

- 9 -

was later dismissed by the State. Appellate counsel further explained that any issues regarding the falsity and relevancy of Ms. Branam's proposed testimony was addressed before trial. Appellate counsel testified that Petitioner had "a lot of issues" he wanted to be raised and the issue regarding Ms. Branam's testimony about the robber wearing black pants had no "real bearing or real weight." Appellate counsel maintained that he investigated and researched "whatever was in the motion for new trial[.]"

Petitioner also asked appellate counsel whether evidence of a "prior hearing" is relevant to a motion for new trial without identifying the "prior hearing" or whether it was a prior hearing in this case or the Athens robbery case. Appellate counsel explained that reviewing the preliminary hearing transcript might be helpful for trial, but it was not relevant or helpful in preparing for the motion for new trial especially because Petitioner was referring to the preliminary hearing of the Athens robbery. Appellate counsel testified that he examined the trial records in this case to prepare for the appeal.

On cross-examination, appellate counsel testified that he has been practicing law thirty-four years and although he presently has a "small criminal practice," he has been "actively" handling criminal cases for twenty-five to twenty-seven years. Appellate counsel testified that he has handled criminal appeals in both state and federal court and has represented over 500 clients in criminal cases. Appellate counsel also testified that he was successful in overturning a conviction on appeal one time in federal court and two or three times in state court.

Appellate counsel testified that upon his appointment as counsel, he spoke with Petitioner to prepare for sentencing and the motion for new trial. Appellate counsel testified that he "tried to raise" the issues Petitioner wanted raised in the motion for new trial. He also met with Petitioner's trial counsel to discuss which issues to raise in the motion for a new trial. Appellate counsel specifically recalled asking trial counsel about the preliminary hearing pursuant to Petitioner's request. Trial counsel turned over "a box with a lot of [Petitioner]'s stuff." Appellate counsel recalled that the hearing on the motion for new trial was "put off several times" which gave him time to amend the motion and to raise the issues Petitioner wanted to raise. Appellate counsel did not recall "anything lacking at the last hearing [Petitioner] wanted added." Appellate counsel maintained that the motion for new trial also covered everything he and trial counsel had discussed about the case and believed should be raised.

Appellate counsel testified that while there was evidence to believe that Detective Rhodes had engaged in misconduct, no criminal charges had been filed against Detective Rhodes when appellate counsel was preparing for the direct appeal. Appellate counsel tried to contact Detective Rhodes via telephone but Detective Rhodes had already left the Sheriff's Department. Appellate counsel received a copy of a letter from the District

Attorney's office accusing Detective Rhodes of violating the department policy on ethics, storage, issued equipment, and lack of truthfulness. Detective Rhodes was fired as a result of the violations. Appellate counsel testified that he later learned that Detective Rhodes was indicted on federal charges of credit card misuse two years before the post-conviction hearing. He assumed that the charges arose in connection with Detective Rhodes's employment in the McMinn County Sheriff's Department as opposed to when he was in the Athens Police Department.

While there were some things that "didn't make a lot of sense" about the case, appellate counsel denied that there was any evidence of Detective Rhodes fabricating evidence:

> Well, I'm not exactly sure, . . . what you mean by fabrication. As – they're saying that this was relevant to the trial. Okay? I felt it wasn't really relevant to the trial. I don't think that's fraud.

Appellate counsel insisted that had the State fabricated evidence, he would have raised it as an issue in the motion for new trial.

In terms of the issues he did raise in the motion for new trial, appellate counsel confirmed that he challenged the evidence taken from Mr. Moore's truck, inconsistency in Ms. Branam's description of the color of the bag used to collect the proceeds of the robbery, the lack of Petitioner's DNA on any of the evidence, the use of photographs to depict evidence that was lost before trial, and the inconsistency of the robber's head garb by the victims to name but a few of the issues. In terms of the evidence collected from Mr. Moore's truck, appellate counsel did not understand why the truck was searched two weeks after Mr. Moore and Petitioner were pulled over in a traffic stop and why law enforcement retrieved items from Mr. Moore's vehicle that were irrelevant to the case such as a gun and "a [Joker's] mask." Upon clarification of the record, appellate counsel agreed that the two traffic stops occurred only a day apart but that the search warrant was executed "a week or two" after the last traffic stop. While appellate counsel thought that the timing and substance of the search did not appear to make sense, he reiterated that such facts did not constitute "fraud" or "fabrication of evidence" as alleged by Petitioner.

At Petitioner's insistence, appellate counsel presented Petitioner's childhood foot disability as newly discovered evidence in the motion for new trial. Ms. Raby testified that she saw the robber run to the getaway vehicle. The issue of whether Petitioner could run was not explored at trial or at sentencing. Appellate counsel conceded that the disability was not newly discovered in that it was one Petitioner had since childhood.

Appellate counsel testified that he tried to "pare down" Petitioner's "very long list of issues" for appeal. Appellate counsel testified that most of Petitioner's issues were evidentiary challenges which are reviewed for abuse of discretion on appeal. Appellate counsel testified that he chose which issues to appeal based on his discussions with Petitioner and the issues that were preserved in the motion for new trial. Appellate counsel agreed that the issues raised in the motion for new trial "opened the door" for what issues could be asserted on direct appeal. In preparing for the appeal, appellate counsel examined the records and researched the issues. Appellate counsel explained that he found no cases on point supporting the position that the trial court committed obvious error.

Based on his legal research, appellate counsel pursued the strategy of "lump[ing]" all the issues for relief for cumulative error because none of the issues standing alone would have led to a successful appeal. He explained, "I thought the other areas would not be sufficient to give [Petitioner] relief. I thought all together they would."

Regarding Detective Rhodes's misconduct as impeachment evidence at trial, appellate counsel declined to say that it would have changed the outcome of the trial. However, appellate counsel could not believe that such evidence would not have some bearing on Detective Rhodes's credibility. Appellate counsel recalled that although Detective Rhodes may not have been the lead investigator, he had an active role in the case. He agreed that Detective Shaw put together the photographic lineup, not Detective Rhodes. Appellate counsel thought Detective Rhodes was present for one of the photographic lineups but he could not be certain. Appellate counsel was aware that there were two aggravated robbery cases. He recalled that Detective Shaw and Detective Rhodes shared information on what leads they had developed in their respective cases.

On redirect examination, appellate counsel maintained that he "brought everything before the Court. And I don't remember there was anything else [Petitioner] said needed to be brought" in the motion for new trial. Petitioner stated that Ms. Lisa Raby, the woman who saw the robber flee the scene, had, like Ms. Branam, "fabricated evidence" and committed "aggravated perjury." Petitioner then asked why appellate counsel did not challenge Ms. Raby's description of the getaway vehicle on direct appeal although appellate counsel raised the issue in the motion for new trial. Appellate counsel responded: "If she had committed fraud and all that, I'm assuming the [trial] court would have not allowed her to testify."

Ms. Raby's cross-examination by trial counsel was admitted as an exhibit and revealed that she had given a statement to the police right after the robbery had occurred. The statement had been video-taped and was played at trial to refresh Ms. Raby's recollection, although the record does not indicate what portion of her statement was played. Ms. Raby testified that the getaway truck had silver wheels. The photograph of

- 12 -

the truck presented by the State had black wheels. Ms. Raby testified that other than the color of the wheels, the truck in the photograph matched the vehicle she saw fleeing the scene of the robbery.

At the post-conviction hearing, the State objected when Petitioner asked appellate counsel whether he agreed or disagreed that Ms. Raby had been impeached by her video statement regarding the getaway vehicle. The post-conviction court allowed the question but ruled for the record that inconsistency in Ms. Raby's description of the getaway vehicle did not constitute fabricated evidence. In response to Petitioner's question, appellate counsel testified that it was "possible" that "an impeached State witness can be grounds for a new trial."

Appellate counsel clarified that no evidence was seized when Mr. Moore and Petitioner were pulled over for an unrelated hit-and-run incident. He added that if any evidence had been collected during the stop, the State did not use it against Petitioner at trial. Appellate counsel recalled that Detective Rhodes was investigating an unrelated robbery where Mr. Moore was a suspect and agreed with Petitioner that Mr. Moore was not involved in the robbery in this case. When further questioned about the search of Mr. Moore's truck, appellate counsel explained that the search of Mr. Moore's truck did not constitute the fabrication of evidence but raised a concern as to relevance. Appellate counsel maintained that there was "no evidence it was fabricated." Accordingly, he could not argue to the trial judge in support of the motion for new trial that Detective Rhodes had planted evidence in Petitioner's case. He argued instead that evidence found in Mr. Moore's vehicle was irrelevant to Petitioner and the robbery. Appellate counsel also argued that there was no DNA evidence connecting Petitioner to the crime.

Petitioner took the stand and testified that appellate counsel was ineffective on direct appeal for failing to file a reply brief and for failing to raise a number of issues:

> [F]abricated evidence, lost evidence, evidence not presented, *Brady* issues, witness being impeached with key evidence that Larry Moore's truck was used in the case as the robbery truck, but it was – through perjured testimony it was used, and I believe if [appellate counsel] . . . would have raised it the way I asked him as perjured testimony and fabricated evidence, I believe the result would have been different on appeal. And I believe that the (post-conviction) Court will agree with me and just as the Court of Criminal Appeals said their self (sic) that [appellate counsel] was inadequate, I believe they said, on page three of their opinion – [appellate counsel] was inadequate as counsel on appeal. So I believe that the facts establish that he's ineffective on appeal and was a denial since he didn't complete a reply brief that actually denied me an appeal. That's about it.

Petitioner also testified that appellate counsel was ineffective in failing to challenge Ms. Raby's inconsistent description of Mr. Moore's truck.

On cross-examination, Petitioner conceded that he did not witness Detective Rhodes search Mr. Moore's truck or talk to anyone who had witnessed Detective Rhodes fabricate evidence. Likewise, he had no witness who was prepared to testify that Detective Rhodes fabricated or planted evidence against him. He based his conclusion that Detective Rhodes fabricated evidence on his examination of the testimonies at trial.

Petitioner testified that he met appellate counsel once or twice and that most of their communication was through letters. Petitioner wrote appellate counsel ten to twelve letters detailing the issues he wanted to be raised on direct appeal. According to Petitioner, appellate counsel raised the issues in the brief but failed to "crystallize" them for this court. Additionally, appellate counsel failed to cite to the record.

Petitioner acknowledged that he has no formal legal training and that his legal experience is limited to performing legal research in his own case while incarcerated. He testified that he drafted and filed the pleadings in this case without assistance from anyone in prison.

When queried by the post-conviction court, Petitioner testified that he first learned that the brief appellate counsel filed was inadequate when he received this court's decision denying his appeal. However, he insisted that he gave appellate counsel specific citations to the record to be used in the brief before this court's decision was released.

On re-cross examination, Petitioner reiterated that the evidence found in Mr. Moore's truck was "fabricated" and "fraudulent." On re-direct examination, Petitioner further explained how Detective Rhodes "fabricated evidence":

> And so where I understand law, you can't present someone else's possession as my possessions because that's – that's obviously fraud and fabricating evidence, if you take Larry Moore's possession and present them in trial against me as my possessions. That's what I meant by not – not did he actually get it from Larry Moore, because I don't know, . . . So once he took them from Larry Moore, it was never fabricated till he put them in trial because as I said, those items were used to show the jury intent to commit robbery. That's – that's what I meant by – the taking of the evidence fabricating.

The post-conviction court permitted Petitioner to reopen the proof and call Athens Police Officer Harold Thompson. Officer Thompson testified that he "vaguely" remembered Petitioner. An affidavit dated May 10, 2017, and signed by Officer Thompson was introduced as an exhibit without objection. Although he did not recall the details of the traffic stop memorialized in the affidavit, Officer Thompson recognized his signature stating that on July 10, 2014, he assisted Detective Rhodes in initiating a traffic stop involving Mr. Moore and Petitioner. Mr. Moore was the driver and Petitioner was a passenger. Officer Thompson likewise did not recall the details of a second traffic stop of Mr. Moore and Petitioner three years later on May 10, 2017. He explained that he has searched "hundreds of cars" and no one search "sticks out." Officer Thompson acknowledged that he remembers "absolutely nothing" about the traffic stop conducted on July 10, 2014, and would need to read the report to refresh his recollection.

Although in its written order, the post-conviction court found appellate counsel "to be a credible witness" and accredited his testimony, the post-conviction court granted Petitioner relief on his claim of ineffective assistance of appellate counsel. From the bench, the post-conviction court made the following findings and conclusions of law in granting Petitioner a delayed direct appeal:

> When I look at these factors, were the omitted issues significant and obvious? Well, the insufficiency was pointed out by the Appellate Court. Is there arguably contrary authority on those issues? Well, [Petitioner], today has given me this *Vasque[s]* case and the *Wyrick* case, and even the *Spurlock* case which would be arguably contrary authority.[4] Were the omitted issues stronger than those presented? Well, in [appellate counsel]'s opinion, no. But in [Petitioner]'s opinion yes. And [Petitioner] really never got his issues raised because the brief itself was insufficient. Were these issues objected to at trial? In part. The impeachment evidence was objected to at trial. The issues of Josh Rhodes did not come out. And the – so that's that. Were the trial court's ruling subject to deference on appeal? Well, they never got there. He never got to raise his issues.
>
> [Appellate counsel] did testify today that he raised a cumulative error theory because he thought that no individual issue had enough to support appellate review. If so, that would suggest that none of these issues are sufficient for appellate review and that a new trial should not be granted. His level of experience was extensive. He did meet and go over the issues and

---

[4] The post-conviction court appears to be referring to *State v. Vasques*, 221 S.W.3d 514 (Tenn. 2007); *State v. Wyrick*, 62 S.W.3d 751 (Tenn. Crim. App. 2001); *State v. Spurlock*, 874 S.W.2d 602 (Tenn. 1993).

- 15 -

[Petitioner] testified that he sent 10 or 12 letters. So it was clear what [Petitioner] wanted [appellate counsel] to consider.

Is there evidence that he reviewed the facts? Sort of. He didn't remember much. He reviewed a plethora of information. Were the omitted issues dealt with in other assignments of error? No. And was the decision to admit an issue an unreasonable one which only an incompetent attorney would adopt? From my review of the evidence, I think affirming the decision of the jury, ruling as I did on the motion for new trial, and ruling on the evidentiary issues during the trial, I think I correctly applied the facts as I understood them to be to the law. But I think everybody ought to have an Appellate Court have a chance to review the facts.

So I'm going to find that [appellate counsel] should have amended his appellate brief to cite to the record those issues that [Petitioner] wanted raised and to present case law in support of those claims so that the Court would not just dismiss it on an ineffective brief, but actually look and review the issues presented.

So I'm going to stay the post-conviction relief that has been filed. I'm going to grant [Petitioner] the ability to have an appeal on a finding that appellate counsel's assistance was ineffective.

Petitioner filed a premature but timely notice of appeal on September 2, 2020. The post-conviction court entered its written order on October 21, 2020.

## Analysis

### I. Procedural Matters

#### A. Petitioner's Motion for Voluntary Dismissal of Appeal

As an initial matter, this court will address for the record the outcome of Petitioner's motion to voluntarily dismiss his Rule 3 appeal. When the post-conviction court denied Petitioner's motion to recuse, Petitioner properly sought relief by filing a Rule 10B application and improperly appealed the decision by filing a Rule 3 appeal. After this court denied Petitioner's Rule 10B application and before the supreme court denied the same, Petitioner filed a motion to voluntarily dismiss his Rule 3 appeal which this court granted. The motion indicates that Petitioner operated under the assumption that a voluntary dismissal would result in a remand to the post-conviction court and not a dismissal of the

underlying post-conviction petition. The post-conviction court accepted Petitioner's amended petition of June 24, 2019.

After the Petitioner unsuccessfully sought a Rule 10 application to challenge the post-conviction court's appointment of counsel, Petitioner filed another post-conviction petition which was given a new case number on December 9, 2019. The post-conviction court treated this petition as part of the same post-conviction proceeding that commenced with the timely filed petition of April 2, 2019. *See Holland v. State*, 610 S.W.3d 450, 457 (Tenn. 2020) (quoting Tenn. Sup. Ct. R. 28, § 8(D)(5), the post-conviction court is directed to "liberally allow" petitioners to amend the petition "[i]f evidence [during the hearing] is objected to on the basis that it concerns issues not raised in the petition or answer"). We likewise construe the December 9, 2019 petition as part of the original post-conviction petition of April 2, 2019. We also construe the effect of Petitioner's voluntary dismissal as a dismissal of Petitioner's Rule 3 appeal of the trial court's decision denying the motion to recuse and not the underlying post-conviction proceeding consistent with the substance of Petitioner's notice of appeal and motion to dismiss. We admonish Petitioner that simultaneously filing competing pleadings nearly dismissed the underlying post-conviction proceeding. Although the courts give pro se litigants "a certain amount of leeway in drafting their pleadings and briefs," we remind Petitioner that he is expected to comply with the same substantive and procedural rules that represented parties must observe despite his incarceration and pro se status. *Hessmer v. Hessmer,* 138 S.W.3d 901, 903-04 (Tenn. Ct. App. 2003) (incarcerated pro se plaintiff obligated to see that summonses were timely issued and served in a manner consistent with the rules of civil procedure); *State v. Sprunger*, 458 S.W.3d 482, 491 (Tenn. 2015); *State v. James Ray Walker*, No. W2012-01593-CCA-R3-CD, 2013 WL 3968804, at *3 (Tenn. Crim. App., at Jackson, Aug. 1, 2013) (pro se defendant waived all issues except sufficiency of the evidence and sentencing based on failure to conform to the Rules).

### B. Notice of Appeal

We next consider whether the State was required to file a notice of appeal from the post-conviction court's order granting Petitioner a delayed appeal in order to preserve its issue challenging the post-conviction court's partial grant of relief. The State contends that it is not required to file a separate notice of appeal and may present its own issues in a responsive brief. In the alternative, the State contends that if a separate notice of appeal is necessary, it urges this court to waive the filing requirement in the interest of justice because the post-conviction court's order was not served on the Attorney General and Reporter as required under T.C.A. § 40-30-112 ("[t]he clerk of the court shall send a copy of the final judgment to the petitioner, the petitioner's counsel of record, any authority imposing restraint on the petitioner and the attorney general and reporter at Nashville"). Petitioner filed a reply brief but did not offer a response. We agree with the State that it is

not required to file a separate notice of appeal to challenge the post-conviction court's order granting a delayed appeal.

"Upon determination by the trial court that the petitioner was deprived of the right to file an appeal pursuant to Rule 3, Tennessee Rules of Appellate Procedure, the trial court shall apply the procedures set out in Tennessee Code Annotated section 40-30-113." Tenn. Sup. Ct. R. 28, § 9(D)(1)(a). Either party may appeal the order granting a delayed appeal:

> An order granting proceedings for a delayed appeal shall be deemed the final judgment for purposes of review. *If either party does appeal*, the time limits provided in this section shall be computed from the date the clerk of the trial court receives the order of the appellate court determining the appeal.

T.C.A. § 40-30-113(b) (emphasis added). Furthermore, the State may appeal as of right from the final judgment in a post-conviction proceeding. Tenn. R. App. P. 3(c). Although the State has the right to appeal from the judgment of the post-conviction court, the State does not waive review of its issues by not filing a separate appeal. *Roy Cunningham v. State,* No. 975, 1991 WL 102685, at *2 (Tenn. Crim. App., at Knoxville, June 17, 1991) (State did not waive post-conviction court's judgment reversing one of the petitioner's guilty plea convictions as being constitutionally infirm by not filing a separate notice of appeal). Under the Tennessee Rules of Appellate Procedure, "when one party perfects its appeal as provided in [Tenn. R. App. P. 3], then it is not necessary for the other party to file a notice of appeal." *State v. Russell,* 800 S.W.2d 169, 171 (Tenn. 1990). The Rules contemplate that "the party not filing the notice of appeal is permitted to state his issues in his Reply Brief." *Id.* This is so because: "The filing of an appeal by one party removes the entire case to the Appellate Court where both parties may present issues in accordance with the rules." *Id.*

The same does not necessarily hold true regarding a judgment granting a delayed Rule 11 application. Like the order granting a delayed appeal, the State may perfect its appeal as of right by filing a notice of appeal with the trial court clerk within thirty days of the post-conviction court's order. Tenn. Sup. Ct. R. 28, § 9(D)(1)(b)(ii). However, should the State choose not to appeal the grant of a delayed Rule 11 application, the State must file a notice of its intent not to appeal so that the petitioner may file a delayed Rule 11 application:

> If the State chooses not to appeal the trial court's grant of a delayed appeal, the State shall file a notice of its intention not to appeal within thirty (30) days of entry of the trial court's order granting a delayed appeal. The petitioner has sixty (60) days from the date of filing of this notice to file the delayed Rule 11 application.

Tenn. Sup. Ct. R. 28, § 9(D)(1)(b)(iii). Although the Rule requires the State to file a notice of intention not to appeal, the Rule nevertheless comprehends a situation where the State does not file a notice: "In the event the State fails to file this notice, the delayed Rule 11 application will be considered timely if filed within ninety (90) days of entry of the trial court's order granting a delayed appeal." *Id.*

When considering the Rule in its entirety, we conclude that the State is not required to file a separate notice of appeal in order to challenge the post-conviction court's order granting a delayed appeal because the requirement to file a notice of intention not to appeal is excluded from the procedure arising from a grant of a delayed appeal. Thus, the State has properly raised its first issue challenging the post-conviction court's order granting a delayed direct appeal.

### C.     *Petitioner's Appendix*

Petitioner attached a voluminous and disorganized appendix to his initial brief. The State contends that any issue relying on a document or pleading that is not part of the appellate record, is waived. As with the issue regarding the notice of appeal, Petitioner offers no argument in his reply brief. We agree with the State and confine our review of the appendix to those documents that comport with Tenn. R. App. P. 28. Any documents included in the appendix must be in the appellate record. *See* Tenn. R. App. P. 28(a) ("[t]he appellant shall accurately reproduce in the appendix *all parts of the record* that must be studied in order to determine the issues presented") (emphasis added); *State v. Matthews,* 805 S.W.2d 776, 783-84 (Tenn. Crim. App. 1990). Because Petitioner chose to prepare and file an appendix, he was required to arrange the appendix in accordance with Tenn. R. App. P. 28(d). Failure to follow the prescribed procedure of Rule 28 constitutes waiver. *State v. Hawk,* 688 S.W.2d 467, 471 (Tenn. Crim. App. 1985).

After a thorough and exhaustive review of the post-conviction records, the records from Petitioner's direct appeal, and the procedural history and the prior orders of this court, the following are hereby stricken because they are not part of the record: Appendix A; Appendix B; Appendix C; Appendix H; the partial trial transcript of the Athens robbery case in Appendix D; letter to McMinn County Criminal Court Clerk dated January 9, 2018, Petitioner's motion for post-conviction judge "to direct court reporter to prepare transcript of the preliminary hearing in 2014-CR-2675," the post-conviction court's order granting motion for preliminary transcript, Petitioner's "Motion For Status Of Preliminary Hearing Transcript" filed January 27, 2021, letter from appellate counsel to Petitioner dated December 3, 2018, letter from trial counsel to Petitioner dated January 23, 2019 in Appendix E & F; and news articles about Josh Rhodes and Sheriff Shaw in Appendix G.

Not only are none of the stricken transcripts, filings, or documents part of the appellate record, none of them were properly supplemented into the record. *See* Tenn. R. App. P. 24(b) (requiring transcripts to be filed with the clerk of the trial court if they are to be included in the appellate record); *State v. Jeffery Keith Toone*, No. W2015-02332-CCA-R3-CD, 2017 WL 1032744, at *6 (Tenn. Crim. App., at Jackson, Mar. 16, 2017) (defendant waived his challenge to the juvenile court's ruling in his transfer hearing by not properly supplementing the appellate record with the transfer hearing transcript where defendant failed to file the transcript with the trial court clerk).

After perfecting his appeal and before the appellate record was filed, Petitioner filed several motions including a motion to supplement the record filed on January 28, 2021. Attached to one of the motions was the post-conviction court's order granting Petitioner's motion to transcribe the preliminary hearing in this case and in the Athens robbery although the post-conviction court did not consider either transcript in granting Petitioner a delayed direct appeal. On February 2, 2021, this court found the motions to be "inapt" and denied them "at this time." On March 3, 2021, the post-conviction record was filed in this court. The record did not include the above listed stricken documents. Petitioner did not however, renew his motion to supplement the record, nor did he file the transcripts with the trial court clerk. *See* Tenn. R. App. P. 24(b) ("[t]he transcript, certified by the appellant, his counsel, or the reporter as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 60 days after filing the notice of appeal"). Instead, he included a motion to supplement the record with the transcripts of the preliminary hearing as Appendix H. Attaching a document to an appellate filing is not the proper method by which to supplement the appellate record. *In re Bernard T.*, 319 S.W.3d 586, 591 n.3 (Tenn. 2010). "This is a court of errors and appeals in which matters below are reviewed when presented by a duly authenticated record brought to this Court pursuant to the Tennessee Rules of Appellate Procedure." *State v. Webb*, 1993 WL 52815, at *1 (Tenn. Crim. App. Mar. 2, 1993) (quoting *Richmond v. Richmond*, 690 S.W.2d 534, 535 (Tenn. Ct. App. 1985)). Our review in this appeal is accordingly confined to the documents in the appendix that are in the appellate record.

## II. Post-Conviction Relief of a Delayed Direct Appeal

In the delayed direct appeal, Petitioner raises a number of issues alleging error at his trial. Petitioner contends 1) Ms. Branam's identification of him in a photographic lineup should have been suppressed because it was the fruit of an illegal stop and search of Petitioner while he was a passenger in Mr. Moore's truck; 2) the general sessions court erred in determining probable cause to bind over this case to the grand jury because the determination was based on inadmissible hearsay by Detective Shaw that Ms. Branam identified Petitioner as the robber in a photographic lineup; 3) the trial court erred in allowing Detective Josh Rhodes to testify that Mr. Moore was a suspect in another robbery,

and by allowing the State to introduce evidence recovered from the search of Mr. Moore's truck; 4) transcripts of the preliminary hearing of this case and the Athens robbery constitute newly discovered evidence of impeachment against Ms. Branam, Detective Shaw, and Detective Rhodes; 5) Detective Rhodes's termination from the sheriff's department and the subsequent criminal investigation into his misdeeds constitute newly discovered evidence which should have resulted in a new trial; and 6) the evidence is insufficient to support his aggravated robbery conviction.

The State contends Petitioner is entitled to no relief on the merits or due to waiver. The State asserts first however, that the post-conviction court erred in granting Petitioner a delayed appeal because the post-conviction court made no finding of prejudice. The State contends such prejudice does not exist. Petitioner counters that he was properly granted a delayed appeal because appellate counsel's failure to file a reply brief resulted in the complete denial of a direct appeal. In doing so, he relies heavily on *Roe v. Flores-Ortega,* 528 U.S. 470 (2000), where the United States Supreme Court held that counsel's failure to file a notice of appeal "demands a presumption of prejudice" because a presumption of reliability could not be afforded to judicial proceedings "that never took place." *Id.* at 483.

Here, the post-conviction court found that appellate counsel's failure to file a reply brief with proper citations was ineffective under *Strickland.* However, the post-conviction court made no finding that appellate counsel's performance prejudiced Petitioner. Therefore, Petitioner was erroneously granted a delayed appeal.

Under the Post-Conviction Procedure Act, the post-conviction court may grant relief when the court "conducting a hearing…finds that the petitioner was denied the right to an appeal from the original conviction in violation of the Constitution of the United States or the Constitution of Tennessee." T.C.A.§40-30-113(a); *see* Tenn. R. S. Ct. 28, § 9(D)(1)(a) ("[u]pon determination by the trial court that the petitioner was deprived of the right to file an appeal pursuant to Rule 3, Tennessee Rules of Appellate Procedure, the trial court shall apply the procedures set out in Tennessee Code Annotated section 40-30-113.") An available remedy to a finding of ineffective assistance of appellate counsel includes a delayed appeal:

> If the court finds that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable, including a finding that trial counsel was ineffective on direct appeal, the court shall vacate and set aside the judgment or order a delayed appeal as provided in this part and shall enter an appropriate order and any supplementary orders that may be necessary and proper.

T.C.A. §40-30-111(a).

The Post-Conviction Procedure Act requires the post-conviction court to make written finds of fact and conclusions of law when determining the merits of a post-conviction petition:

> Upon the final disposition of every petition, the court shall enter a final order, and except where proceedings for delayed appeal are allowed, shall set forth in the order or a written memorandum of the case all grounds presented, and shall state the findings of fact and conclusions of law with regard to each ground. The court shall enter an order granting or denying the petition within sixty (60) days of the conclusion of the proof. The order shall contain specific findings of fact and conclusions of law relating to each issue presented.

T.C.A. § 40-30-111(b); *see also* Tenn. Sup. Ct. R. 28 § 9(A) ("[t]he order shall contain specific findings of fact and conclusions of law relating to each issue presented"). Thus, the post-conviction court's duty to make findings of fact and conclusions of law is mandatory. "Where the post-conviction court fails to make 'a clear and detailed finding of fact.' Either orally or on the record, the appellate court is 'at a complete loss to know the basis of the trial judge's decision and judgment; assignments of error and appellate review are seriously frustrated if not completely thwarted by lack of a definitive finding of fact by a trial judge.'" *Darryl Robinson v. State,* No. W2020-00942-CCA-R3-PC, 2021 WL 3642399, at *5 (Tenn. Crime. App., at Jackson, Aug. 18, 2021), *perm. app. denied* (Tenn. Nov. 17, 2021) (quoting *Brown v. State*, 445 S.W.2d 669, 671 (Tenn. Crim. App. 1969)).

It is well-established that the test for ineffective assistance of counsel is the same for both trial and appellate counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Campbell v. State*, 904 S.W.2d 594, 596-97 (Tenn. 1995). Namely, a petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was deficient in failing to adequately pursue or preserve a particular issue on appeal and that, absent counsel's deficient performance, there was a reasonable probability that the issue "would have affected the result of the appeal." *Campbell,* 904 S.W.2d at 597; *see also Carpenter v. State*, 126 S.W.3d 879, 888-893 (Tenn. 2004) (reviewing court must evaluate the merits of an omitted issue to determine whether an appellate counsel's performance was deficient and prejudicial).

In its order granting Petitioner partial post-conviction relief, the post-conviction court made the following written findings:

> It is uncontroverted that an appeal was filed and that many claims of error were raised. It is also uncontroverted that after [appellate counsel] was

placed on notice of the State's claim of waiver, he chose not to file a reply brief correcting the deficiencies. He explained that, based on his research and his experience, he did not file a reply because he did not think it was needed. As a result, no citations to the numerous pre-trial motions, objections, bench conferences and jury-out hearings were made to support the claimed bases for his appellate issues.

No one elicited testimony from [appellate counsel] to determine the reasoning behind his choice. Therefore, it is unknown whether he was unable to cite to the record because the issues had not been adequately preserved, or, if he was frustrated with [Petitioner]'s general claims of error and no longer wished to expend further effort on behalf of [Petitioner], or if he had other pressing matters that prevented further refinement of he issues, or if he simply disagreed with [Petitioner]'s claims and concluded it would be unethical to raise them on appeal. The attorney's reasoning was not asked or explained through his testimony.

[Petitioner] claims he told his attorney to "file a brief" after he saw the State's claim of waiver. [Appellate counsel] stated he received the State's assertion of waiver but based on his research and experience, he felt his filing was sufficient.

As evidenced by the tortured proceedings and the various filings of [Petitioner], it is probable that [Appellate counsel] found [Petitioner] to be demanding. But, even when working with a difficult client, a reasonable appellate attorney would have attempted to cite to the record. And, if placed on notice of a deficiency, a reasonable attorney would have taken some effort to address the situation. Because nothing was filed, [Petitioner] was denied appellate review. His issues were not considered.

The post-conviction court found that appellate counsel rendered ineffective assistance to Petitioner on appeal. However, the post-conviction court did not articulate a finding that appellate counsel's performance was prejudicial. Petitioner asserts that appellate counsel's failure to file a reply brief responding to the State's lack of citation argument constituted the waiver of the only issue raised on appeal and therefore a complete denial of an appeal. While appellate counsel's failure to file a reply brief justified waiver on direct appeal, it is a different matter altogether when considering appellate counsel's performance for actual prejudice. Petitioner was required to show that but for appellate counsel's failure to file a reply brief citing to the record and supporting legal authority, the outcome of the appeal would have been different. In other words, Petitioner must prove that a reply brief was so critical that the failure to file one undermined the outcome of the

appeal. *Campbell*, 904 S.W.2d at 597 ("petitioner does not suggest a specific issue that, if addressed in the appellate brief, would have affected the result of the appeal").

To that end, the post-conviction court was expected to re-examine specific issues it had previously adjudicated to determine whether record citations, case references, or arguments would have had any effect of the court's previous decision. "The post-conviction court was perfectly equipped to apply the *Strickland* analysis because the precise claims the petitioner wanted to raise are known . . . It would not be overly burdensome for the post-conviction court to review those additional claims and to determine whether the petitioner was prejudiced by counsel's failure." *Howard*, 604 S.W.3d at 63. Therefore, the post-conviction court was required to undertake the same analysis as stated by the supreme court in *Carpenter* and reiterated in *Howard*. Because no such analysis was performed by the post-conviction court, we conclude that the record is insufficient to enable meaningful appellate review. Indeed, the post-conviction court made no finding of prejudice. And without clear and discernible findings, we cannot fully address the merits of Petitioner's claim against appellate counsel. Accordingly, we remand this case for entry of written findings of fact and conclusions of law on all issues presented, as required by Tennessee Code Annotated § 40-30-111(b) and Tennessee Supreme Court Rule 28, § 9(A).

## Conclusion

The judgment of the post-conviction court granting a delayed appeal is reversed. The case is remanded for entry of written findings of fact and conclusions of law on Petitioner's claim of ineffective assistance of appellate counsel, as required by Tennessee Code Annotated section 40-30-111(b) and Tennessee Supreme Court Rule 28, § 9(A).

_____
JILL BARTEE AYERS, JUDGE